May I please the court? My name is Jack Birch. I'm an attorney with offices in Aberdeen, Washington. I represent Mr. Harveston, who is a plaintiff in a civil rights action. Fifty-one years ago, when I got out of law school, I was taught that all cases should be decided on the merits. It seems that since then, the rule is more of summary judgment than hearing cases on the merits, and we're here because there's been summary judgment entered against my client's claim that his civil rights were violated. I'm sure that you know what the facts are, but I'll try to state them to put my argument into perspective. After a wedding, my client invited people to his home, and he proceeded to get extremely intoxicated, but that was at his home and on his property. There was a complaint made to the police, and the police arrived at his home, and I'm going to state the facts as our witnesses would state them, not as they are disputed, obviously, and I think because they're disputed, summary judgment should never have been entered. Well, and as I understand it, on summary judgment, which has issues of immunity in it, we are supposed to view the facts most favorably to your client, are we not? That's what I understand the summary judgment rules to be, but I'm not sure that in practice that's happening anymore. Or that the district court judge did that. And I definitely do not feel that he did that. In fact, I feel that he just took the affidavits of the defendants and used that as a verity and justified the entry of summary judgment. At any rate, when the officers got there, it's our position that they immediately entered my client's home. When they entered the home, they found that my client was being restrained by two of his friends. He was actually the one being restrained. When the police came, they got up, and my client was very unhappy that the police had come into his home without a warrant, and he asked them to leave. They refused to leave, and he refused to discuss anything with them. As a result, he was arrested and handcuffed, and while he was handcuffed and helpless, he was maced. Is there a contested issue of material fact over your client's condition? As you said, he was heavily intoxicated. He was belligerent, being restrained, and was verbally failing to comply with the commands of the officers. Is there any dispute over that? There is a dispute that he in any way ever caused any threat to the police. Is there a dispute that he knocked the television set over when the officer told him not to get off the floor, and he did so? That was done before he was handcuffed, and he bumped into the wall and knocked his television over. Okay, so there's no dispute over the fact that he knocked the TV set over. No, but it was his property. There's no dispute about that. And they had entered at that point. Is that correct? I'm not sure if they had entered at that point or not. I can't remember exactly. I think that the television was bumped over after they had entered. And the front door was standing open at the time the officers entered? No, there's a dispute on that, that the door was closed and that the police opened the door, and they left the door open, and that Lady Brianne was on the porch and saw some of the incidents. Okay, and is there a dispute over the fact that before Officer Daniels entered the residence that she was told that help was needed inside? Yes, there is a dispute. As a matter of fact, in one of her affidavits, I think it was Brianne, the indication was that they never stopped to talk to anybody, and they just walked straight into the house. But I thought the officer's affidavit was that she learned that from someone else. That's what the officer's affidavit said, that that's disputed. Well, but if the officer testified that someone else, who apparently was not overheard by your witnesses, told her that someone needed help inside, how is there a material dispute over the facts? The question is, what did the officer subjectively believe at the time she made the determination that a fight was in progress and that someone needed help inside? Our witnesses said that they immediately went in the house and didn't talk to anybody. They asked a question of Brianne, and she never answered that question. I thought there was a neighbor who had called 911 to report the disturbance. I don't know who called. Nobody knows who called 911. But there was a neighbor who witnessed the assault. Didn't the officer testify, or at least by affidavit, appear as to what she was informed en route by her dispatcher? She was informed, according to her affidavit, that there was a fight in progress at the property. And at this point, the only witnesses that you have wouldn't be able to refute that testimony because they wouldn't have overheard the radio dispatch, right? Well, we can't refute the fact that possibly there was such a radio dispatch, obviously. But we can dispute the fact that there was any emergency requiring them to go into the house  I'm a little confused because if the officer entered the house and saw your client being physically restrained, he was heavily intoxicated, he was belligerent, why doesn't that confirm what the officer learned en route to the house when she was dispatched to the call? And how is there a dispute over that material fact? Well, I don't think there was a fight going on. The friends were just trying to calm him down. That's the difference in being a fight. Well, didn't they admit that they were pinning him, that two men were pinning him to the floor because of his condition? That was admitted, but he wasn't really arguing or wrestling with them. In fact, he had asked them to do that if he got out of hand. So there was no... He was out of hand at that point. Prior to the officers coming in, I think that they needed to restrain him, yes, from destroying his own property, which he had an absolute right to do. At any rate, when they entered the home, he was the one being... Why was he so upset? I think he was upset because he was intoxicated. He did say that he was upset because people had come to his home he had not invited. I think that he was upset because he was intoxicated. And you're not always logical when you're intoxicated. Is your claim is a violation of the Fourth Amendment? I'm claiming that there is a violation of arresting him in the first place and then of the assaultive behavior that was not necessary. Okay. So what did the officers do after they entered the house? I would have to say that as far as the assaults are concerned, I think I'm wrong in claiming that Officer Daniels could have stopped it because I think it happened so quickly that there's nothing she could do. So I would have to say, in that regard, I agree with the defense attorney representing Officer Daniels. However, when she was told to leave by my client that there was no emergency and they didn't leave and they ended up arresting him for obstruction of justice, resisting arrest, and disorderly conduct, all of which he was acquitted of. And disorderly conduct is a public offense, not something that goes on in your home. And there is a big dispute as to whether he ever did anything to threaten the officers. That's denied. So after he was handcuffed and the officer's manual of Westport says you only use mace as a defensive reason, they maced him because he didn't roll over on his stomach as the officer asked him to when he was obviously intoxicated. And I do not think that was a proper use of mace. It was a violation of their own manual. So you have an excessive force claim in connection? Pardon? There's an excessive force claim in connection with the mace? Yes. Is that correct? And you are challenging the initial entry of the house, is that correct? Yes. I don't think that there was any articulate circumstances at that time that would indicate that there was any kind of an emergency going on. But once they entered and they found that there was no emergency and they were asked to leave by the owner, they should have left. They didn't have a warrant. That's undisputed. And whether or not there was an emergency or not is at least a disputed issue of fact? Certainly. Mr. Burch, if we find that the entry was lawful without a warrant because of the need to render emergency aid, and if we were to find that the demeanor of your client was such that there was probable cause to arrest him, is it true under Washington law that he is not privileged to resist or use any force to resist an otherwise lawful arrest? That's correct. That's disputed that he ever used any force to resist being put under arrest. I understand. And he was acquitted of that? Pardon? He was acquitted of that? He was acquitted of all charges, obstructing justice, which every time I see that it gives me an alarm that maybe civil rights were violated. And he was a resisting arrest. You're not arguing that the defendant officers are collaterally estopped by the fact that the criminal charges were dismissed? No, I'm just saying that that is some indication that the arrest was wrongful in its inception, but obviously there's no collateral estoppel in that regard. You have used your time, but we'll give you a minute on rebuttal. Thank you. Thank you. May it please the Court, I'm John Kubler on behalf of Defendant Vanessa Daniels. We're splitting our time today. I'll take the first five minutes. I think there's been an admission this morning that there's no excess force claimed against my client. She obviously didn't participate, and she can't be liable for cutting hands. She used the force. She couldn't have done anything to stop it. So I'm going to address the entry into the house or anything else that you'd like me to. Would you like to speak up a little bit louder? Well, I think I stand over the top of the microphone, so hopefully that's better. Officer Daniels was responding to a 911 call from some anonymous person about a dispute of noise. The premises showed up, saw the ends of kind of some fighting that had been going on outside, some people that were emotionally upset, and was told by somebody that there was need for help inside the house, that somebody inside needed help. I'm not sure if the record is clear whether or not the door was open. I know that question was asked. But so I don't think there's any evidence one way or the other on that. Isn't there a dispute as to that? I don't think there's any evidence. Or you just think there's no evidence? No. They didn't have to knock in any event? They could just walk in? I just don't think the record addresses that issue, Your Honor. What about the? No, I asked the question. They don't have to knock? They could just walk into somebody's house? Oh, I see. Well, I think the emergency aid exception, you've just got the two elements. It doesn't matter whether the door's open or not. It just means is there an emergency? Well, counsel, here's what's troubling me. It would appear that the district court accepted the affidavits that there appeared to be an emergency. But the plaintiff is disputing that and saying that if they get an anonymous tip that there's a problem and there doesn't appear to be, they can't just walk into somebody's house. That appears to make some sense to me. So what am I missing? Well, we're here on a qualified immunity issue. And we're here to decide whether or not the officer even has the right not to be sued. And so this court has to make a determination of whether or not this suit should even be proceeding. Because we have to take the facts in the light most favorable to the plaintiff. And if the officers go to the house on an anonymous tip that there's something going on here and you're saying there were manifest signs of an emergency, but the plaintiff seems to say that that is not the case and that they're entitled to a trial, it seems to me the law is pretty clear that you just can't walk into somebody's house on the basis of an anonymous tip. That's correct, Your Honor. You have to have an emergency. Right. So everybody knows that. So there has to have been an emergency. Right. And an anonymous tip that there's an emergency here is not good enough. Was it anonymous? I thought there was some neighbor called the dispatch. I think it was a neighbor, but I don't know who it was. But anyway, I think that on qualified immunity, the Supreme Court has made some comments about it's not the traditional issue of fact. We don't have a procedural motion that really addresses qualified immunity. Summary judgment is the closest thing that there is. But the law is very clear, isn't it? Well, it sounds good. You can't just walk into somebody's house. Oh, you can't just walk into somebody's house. It's clear about that. But here the officer says, I have somebody, I was called for a complaint, I got there, there was all this apparent fighting going on, and somebody tells me that somebody in the house needs assistance. Is the officer just supposed to stand there and not do anything about that? Well, the apparent fighting that's going on by the people outside, that is disputed by the grand, isn't it? Well, the people that were involved in the fighting, some of them have been denied it. But others say that there was. But that's a disputed issue of fact. Well, it's not a disputed issue, as Judge Solomon pointed out, that there was a report that there was an emergency in the house. And what's not a disputed issue of fact is that this man is being held down by two other men. Right. And that corroborates the testimony of the officer that there was yelling and screaming going on. Right. But police all the time, they have people that say different things. Some people say there wasn't a fight. Some people say there were. But the officers are entitled to take reasonable basis based on some of it. They don't have to. But I thought you just said that if somebody calls a police officer and says that there's something going on in a house, that they can't just walk in. There has to be some manifestation of it apparent to them that there is an emergency. It is that problem that appears to be disputed. I guess I don't agree with that, Your Honor, because the fact, what I'm trying to say, is that though some people say that deny that there was a need for an emergency, there were others that said there were. So an officer shouldn't have to be put in a position of deciding, well, who's telling the truth about that, whether or not there's an emergency or not. Mr. Kruger, let us inform the second problem. Associate versus cast officer was acting reasonably. When are these people telling the officer that now, in their affidavits or at the time? When she first arrived. She was told that that is the basis for her entry into the house, that somebody told her somebody in the house needed help. Okay, and let's try it this way. Just tick off, if you will, the undisputed facts that would establish the need to enter to render emergency aid. What are they? The need to render emergency aid? Yes. Well, she shows up. There's people outside, some of whom say that there's been fighting going on. Some don't. But the fact that some do establishes it. And does she hear any? Somebody else says somebody in the house needs help. That right there is enough. When was this set? Outside? That's what I'm not understanding. This was outside. The officer says, somebody told me this outside. Therefore, I looked in. That is not disputed. The plaintiff has never presented any evidence to you that when the officer said, somebody outside told me that somebody inside needed help, isn't true. They've presented some evidence of people, other people, that claim that that's not true. But they don't present any evidence that the officer didn't truly believe that somebody told her that somebody in the house needed help. There isn't any controversy of that fact. And then did she hear any noises or anything outside before she entered? I don't think we have any evidence on that. I think what she said, well, she said that it appeared to her that there was fighting that had just gone on, there were people very emotionally upset, and that there was an indication that there was fighting going on inside the house, and somebody needed assistance. That's why she entered. I think that establishes emergency aid, and I can't imagine a police officer not entering under those circumstances. Thank you, sir. Give your time to your co-counsel. Thank you. May it please the Court. My name is John Justice. I'm here today representing Officer Cunningham. Summary judgment entered on behalf of Officer Cunningham should be affirmed by this Court. For the reasons, first of all, which Mr. Kugler has pointed out, there was an emergency exception. When Officer Cunningham entered the house, Officer Daniels had already entered. He testified by declaration that he heard yelling from inside the house after his fellow officer had entered. Why did he spray mace on him when the man had handcuffs on him? I think it was handcuffs behind his back. Officer Cunningham had warned Mr. Harveston a number of times to stay on the ground. At that point, there were two officers in the house with three males. They were outnumbered. They were concerned that Mr. Harveston's behavior was not only endangering the officers but potentially could incite the other individuals. Two males and another male with his hands behind his back. That's correct. Handcuffs. Correct. Two unsecured males also at the same time, and two police officers. Mr. Harveston sprayed the two unsecured males. He sprayed the secured males. Correct. After warning him repeatedly that if he did not stay on the ground that he would be pepper-sprayed. This is confirmed by the testimony of Crandall Ashby who was the plaintiff's close friend and who witnessed the incident from inside the house that the officer, in fact, warned Mr. Harveston that he would be pepper-sprayed if he did not remain on the ground. Just because he was handcuffed did not prevent him from standing up and rushing at one of the officers and as well as his behavior in being disruptive and preventing the officers from carrying out their investigation. He had been warned repeatedly. What investigation were they carrying out? They were trying to find out what was going on. Was there an emergency? What was the nature of the emergency? Did someone else need help? Was there something else going on in the house? Simply trying to question these individuals about what had happened. There's no dispute that Mr. Harveston was interfering with that by his behavior and the officers had warned him repeatedly before using any force on him that he would be maced if he did not stop. It's troublesome because he's in his own house. Correct. The officers come in, all of a sudden he's handcuffed in his own house and he is resisting being handcuffed in his own house and he is maced. Now, whether or not this is excessive or whether or not this is perfectly reasonable under the circumstances, it just sort of, it sounds like something that ought to go to a jury. We shouldn't just assume that somebody in his own house should, that the officers are acting reasonably when they mace somebody who's drunk in his own house after he's been handcuffed and they've entered without knocking or without, on the basis of something that somebody said outside when he wasn't even, didn't even know about. Well, and I think that putting in context of what happened, the courts have said the best situation is when police officers take control of the situation. That leads to less injuries to both the suspect and the officer. A jury argument. But the qualified immunity analysis asked the district court to not simply send everything to trial. Every time you have a dispute, it doesn't lead to a trial under the qualified immunity analysis. But taking the facts in a light most favorable to the plaintiff, would this be reasonable? Yes. And I don't, as a matter of law, and I am not, I'm not quite seeing. No, the question is when officers are told that they have a suspect, they're trained, the case law says this when they have a suspect who is resisting, who is causing a disturbance and who will not comply after repeated requests, that pepper spray is a reasonable use of force under those circumstances. Do you have any cases that establish, one way or the other, the second prong associated versus counts? The humble, sorry. The use of pepper spray on a restrained, handcuffed individual was clearly established as a violation of the Constitution. There are no cases cited by the appellant prior to this event that would say to an officer that where a person is simply because they're handcuffed, even though they are continuing to resist. No, you have to have a case that says that that's okay, I think. Well, what the court says is have the officers been put on notice by clearly established law that their behavior is violation, violates the Constitution? That's the Brousseau case where the court says you can't look at cases that come afterwards to say whether or not the officer has been put on notice. I understand that. Okay, you've more than used your time. I think we need to get the appellant. Thank you. This last minute. All I can say is that everything they've said is disputed in their affidavits, and I would ask you to refer to the affidavit of Mr. Pernula, who was the neighbor across the street, who said there was nothing going on. When the first officer arrived, she waited for the second officer, and that he didn't think, nor did Breanne think, that they talked to anybody. They went directly into the house. The door was closed. Now, as I understand the manual of Westport is you don't use pepper spray except for defense, and they didn't need to defend themselves against a handcuffed person. Then even if he is resisting their commands to stay on the floor, he gets to his feet, knocks over the television set, and the officers perceive that he is basically, they're trying to restore the peace, and he's doing just the opposite. You're saying that the manual doesn't allow the use of reasonable force under those circumstances? Those aren't the circumstances. The television was knocked over before he was handcuffed, and he never got to his feet when he was maced. He was on his knees. Okay, he was trying to get up, right? No, not necessarily. He was just trying to get off of his back or off of his stomach, I guess. So he wasn't necessarily trying to get up. He just didn't want to be laying down. So that's all I can say, and there is no dispute. Well, I guess there is a dispute by the attitude of the officer. He was taken to the car that Officer Cunningham took him by the hair in the back and slammed his head against the car, and he was dropped. Then they went and got gloves and came back to him. I thought your client testified on deposition that they put their hand on the top of his head to help guide him into the car so that he wouldn't hit the roof of the car. Didn't he say that on deposition? My client was totally smashed. How could they say that? He said that he was drunk and it couldn't be true? I don't think that he remembered what went on. But did he say that in his deposition? In his deposition, he indicated that. That's correct. But the person who saw it happen, who was not involved with either party, testified in his affidavit and in the trial that the officer, without any justification, slammed his head against the car. Now, I guess you could take the word of an intoxicated person on those things that help the state and ignore the things that don't, I mean, that help the city and ignore the things that don't help the city, but I would say that Mr. Harveston's testimony is seriously flawed by the fact that he's so intoxicated that he doesn't really remember. So that creates the material issue of fact and dispute that he can't get his story straight because he was too drunk? Yeah. What creates the dispute of fact is Mr. Pernula's affidavit, which says that he was not doing anything to justify having his head slammed against the car. Okay. Just one more question. The defendant says it's uncontroverted that someone outside the house told the officers that someone inside needed help. That is controverted? Yes. In fact, Breanne said they never stopped. They went directly in the house. Mr. Pernula said that Mr. Cunningham had words with somebody and he didn't know it was said. So there is a difference between Breanne's testimony and Mr. Pernula's testimony in that regard. Were they referring to Officer Cunningham, who arrived later, or Officer Daniels, who arrived first? He was referring to Officer Cunningham, who arrived later. So there is no testimony as to whether anybody saw Officer Daniels speak? The testimony was that she didn't stop and talk to anybody. She went directly into the home. That's the girl who was sitting on the porch. And her testimony was that the door was closed when she went in? Her testimony was that after the officers went in, she doesn't remember if the door was closed when they went in, but the door was open and she could see in there and there was no reason to handcuff. Okay. So there's no testimony. We don't know how the officers got from the porch to the living room as to whether they knocked on the door and somebody opened it or whether the door was open and they just walked in. The record is silent. My recollection is that one of the fellows in the house said they opened the door and walked in. But my client was being, at that time, restrained by his friends. Thank you, counsel. The case just argued is submitted for decision. We'll hear the next case, which is Hanson.
judges: Schroeder, Tallman, Bea